Good morning, Your Honors. My name is Chris Beatty on behalf of the petitioner. I'm only going to be speaking for about two minutes and I'll be passing my time off to the ACLU. Just wanted to briefly set the stage on this case. It's undisputed in the record that my president Jacques Chirac ordered a friend of his to implant a microchip in her mouth and monitors all of her movements, can access her mind, that the TV spies on her, that they know her thoughts, and that if she returns to France they'll kill her because of the ability she has to look at people and kill them. And the IJ found she was, quote, credible in her beliefs. The BIA called these beliefs sincerely held beliefs. And that's the record and I don't think there's any evidence to the contrary. As I understand it, you didn't file any sort of supplemental brief on her behalf. I did not, Your Honor. But the ACLU filed an amicus brief on her in support of their concerns. That is correct. And in order to preserve privilege, I won't go too much into that. So the questions that I have, maybe I should just direct them to the ACLU. I think that would be appropriate, Your Honor. Okay. Is there a removal order in the record other than the order from May 9th, 2008? I do not believe that there's a formal order. There's certainly references by the government about their plans to deport her. There's statements from the judge in a quote, and the government is the one trying to remove you. But without a final order of removal, this court would not have jurisdiction. I do not believe that is the law. Well, under a case law, there has to be some sort of determination that she's subject to removability. And when we looked through the administrative record, we couldn't find that particular document. But I assume because they referred the matter for removal proceedings that they know what they're doing. And I assume that they made that determination, but it's not in the record, and that's why we sent out the order. So maybe that comment will be, the government will address that when they... Yes. Obviously, if the government were to say, look, we're not going to deport her, that would remove her. We would be open to that. The difference is what's in the record. Can you point to anything in the record that is an order of removal other than the commentary you've noted at the hearing? Well, this is where I think there's a nuance here is it doesn't need to be an order. There needs to be a functional equivalent of a removal order. And under the Bowtie case, you know, and also even the Niekraser case, you know, the standard is initial determination of removability. So if the government is saying they're going to remove her if these proceedings are, you know, not in my client's favor, and if the judge is making comments about removability, I believe it meets that threshold, notwithstanding there not being an actual formal order. That's because this is an asylum-only proceeding. That's correct. It's kind of unique. I hadn't seen one of these. Yeah. It's an interesting procedural situation. So with your permission, I'll turn the time over to the ACLU. Thank you. We're going to hear, let's hear from the ACLU, and then we'll pick, and then we'll come back and we'll hear all the... Good morning, Your Honors. Jessica Karp-Bunsell for the ACLU. With the Court's permission, I'd like to reserve one minute of the time for rebuttal. Sure. As the Court has heard, petitioner's claims for relief are based on her belief that the French government implanted a device in her tooth to monitor her because it believes she can kill people by looking at them. The IJ conducted a hearing on this claim at which he permitted her to appear pro se and present evidence based entirely on these obvious delusions. This was reversible error. Did the IJ make a finding that she was competent to proceed? The IJ did. The IJ made a finding first that she exhibited a delusional state of mind, but the IJ went on to find her competent and essentially said, outside of her delusions, she understands what's happening. And while it may be the case that there could be a person with delusions who's nonetheless competent to represent themselves in unrelated matter, where the IJ finds the petitioner has delusions about governmental persecution, that person cannot be competent to represent themselves on claims about governmental persecution, and it was error for the IJ to so find. Do you agree that the procedures of Franco Gonzalez do not apply in this case? We agree that the petitioner is not a Franco Gonzalez class member. Our argument, we have two. The first one is that under MAM, counsel should have been appointed as a safeguard, and the second one is under the Rehabilitation Act, closely tracking the reasoning of the Franco Gonzalez as a reasonable accommodation, but she is not a class member, and that case does not directly apply. And the Rehabilitation Act argument was raised by the ACLU for the first time. That was the first time that argument was raised. Is that correct? That's correct, Your Honor, and the government argues that the court shouldn't reach it because it wasn't exhausted, but there's no exhaustion requirement in the Rehabilitation Act. This court held that in jail versus Social Security Administration. So what other, short of appointing counsel, what other safeguards could the IJ have utilized? Well, if you look at the MAM safeguards, Your Honors, the only ones that could have made a difference other than appointing counsel would have been to administratively close the proceedings or terminate, and the government acknowledges in their supplemental brief at page 8 that had the IJ found the petitioner incompetent, she likely would have taken the case off the docket. She says that in the record at 57 and 58. But other than that, if you look at the safeguards, there are things like closing the court, that wouldn't help. Waiving her appearance wouldn't have helped. Granting continuances, the IJ did that and it didn't make a difference. Allowing a friend, family member, or guardian to appear on her behalf, there was no such person. And even if there were, there's no guarantee they would have been qualified. What could a lawyer do for her? I think many things, Your Honor. I think one of the things the government says is, well, so what, even if she wasn't competent, nothing would have been different. I think this court has said it's very hard to figure out how things would have been different if there was a lawyer. And for that reason, there's no prejudice requirement in a denial of counsel claim. That's Montes Lopez versus Holder. But here we can see how things would have been different. For one, the attorney could have been able to ask for administrative closure, as they did when the case arised to this court. It seems the government gave substantial consideration to that request. It might have come out differently had it been made earlier. Another thing we know, asylum claims from France are rare. But there are viable asylum claims based on the threat of forced institutionalization in psychiatric facilities, and it possibly could have been developed had she had counsel below. It's very difficult to see how the proceedings would have been different, but it's clear that they might have, and particularly also to turn the court back to the IJ statements, that she might have simply closed the case. So your conclusion that the petitioner was not competent is based on the nature of her claim, that her claim is delusional, I believe is the word you used or co-counsel used. Is there a diagnosis or any other evidence in the record that suggests that she's not competent? There's no medical diagnosis. The IJ did not get a medical evaluation, as she would have been allowed to do under MAM. But there's her testimony, Your Honors. And we think in this case, I think her representative summarized some of that. I think, you know, if the court looks in the record. Well, we've read it. I mean, we're fully aware of what the claim is and what's in the record in the briefs. But she has a job. She's functioning. She's lived here for a number of years. She was coherent and capable at the hearing. She answered questions. She indicated she fully understood the proceedings. She was competent and successfully filed a motion to reopen proceedings. So I understand the nature of the claim. But it seems to me that that's the entire basis of arguing that the IJ should have determined that she wasn't competent to proceed. That's right. Where you have delusions about governmental persecution, you are not competent to present a claim about governmental persecution. That's our position. Turning to the Rehab Act claim, most of this is laid out in our brief. But just to make a few points, the government says that she was denied, that she was not denied meaningful access because she did go to the hearing. She did testify. But again, if the court finds that she was not competent or that she had delusions about governmental persecution, she necessarily didn't have a reasonable opportunity to present evidence about that. And the court government also makes a sort of half-hearted argument that it would be a fundamental alteration to have appointed counsel here. But counsel appear on behalf of mentally incompetent people in immigration court every day, sometimes appointed by the government far beyond what Franco Gonzalez requires. The government has a nationwide program to appoint counsel for mentally incompetent detained people. And the Supreme Court's decision in Barnett and this court's decision in Hamamoto make pretty clear that where the defendant is already doing the act that's requested as the reasonable accommodation, it's not a fundamental alteration to do it again. Do you want to save your time for rebuttal? Yeah, thank you. Good morning. Edward Durant for the United States. I will talk about jurisdiction first because the court asked us to address that. Based on two cases, Nguyen and Nekursa Rimos, Ms. Mizon, the position of the government is that Ms. Mizon was out of status in 2008 when she applied for asylum. She made an affirmative asylum application to USCIS. And some agent there or officer at USCIS determined that she was an overstay from France and referred her case to an immigration judge, asylum only proceedings. There's no formal order of removal. Correct. I understand that, but our case law seems to say that there needs to be a specific determination made by some immigration officer in the proceeding that says that she's subject to removal. And there has been. But where is it in the record? It's not in the record, Your Honor. And it's not like the Nekursa case where he was a criminal and they went down to the jail and they filled out a notice of intent to deport. As far as I know, Ms. Mizon has never been encountered by the enforcement folks of DHS. But when it was referred to the IJ, there must have been some determination made. There would have been. It was based on her. She filed an asylum application in 2008, and then USCIS referred that to the immigration judge with an IHC. But did they make some sort of determination? They made some determination. Okay, where is that determination? It's not in the record, Your Honor. When we sent out the order, did you look in the A file? Absolutely. I looked in the A file, Your Honor. How do we have jurisdiction? The T file. Under our case law. Because it's just like in Nien, where you have the final order, if it's just Nien, is when the board affirms or if it affirms the IJ's order, that's the functional equivalent of the removal order. Now, the agency is prepared to remove Ms. Mizon if the court finds it has jurisdiction. At that point, they would execute an order. But that's how this happens in when an alien requests an affirmative asylum application. This is not a case like Nekursar where, you know, she was detained or she was found to be at a jail because she committed a crime. I'm just looking at what our case law has said, the Ninth Circuit cases. And in this kind of situation, I mean, I understand that in this kind of proceeding, there doesn't need to be the traditional final order of removal. But you need to comply with what our case law says in this kind of situation, which is that there needs to be a review. We said that the functional equivalent is a determination by an immigration officer that the person is subject to removal. I just assumed, when I first looked at this case, I assumed that that existed because it had been referred to the IJ. So I thought, well, there must be, but we looked. I asked my law clerk to look. There would be a determination, but there's nothing in the T file and the A file that says, you know, you're removable. But that is maybe the function of the regulation at 208.2. If someone is a visa overstay, they're not entitled to 240 proceedings. They're automatically referred to immigration-only proceedings for determination of whether or not they, excuse me, asylum-only proceedings for determination of whether or not they've made asylum or not. So your argument is that because there should have been an order of removal for her to be referred to the immigration judge, we should assume that there is one, even if there's nothing in the record to support that? That's what I'm arguing, Your Honor. And that's my understanding of how USCIS does it. There's nothing amiss here. I thought there might be something missing, an administrative error. But this is how the USCIS proceeds in asylum-only proceedings for someone who's requesting, who goes in and just requests asylum, and then they send them to an immigration judge for asylum-only proceedings. Again, very different from the alien in the cursor who was a criminal. Is there a regulation, apart from our case law, just putting aside our cases, is there a regulation that says it's equivalent of saying when a person is in asylum-only removal proceedings, there's no need for a final order of removal? No, and the closest regulation I can find is 208.2. Hold on, hold on. 8 CFR. Go ahead. So that would be C. 8 CFR section. 208.2. Charlie. Okay. Certain aliens not entitled to proceedings under 240. And if you go down to Roman numeral 4. Okay. So how Ms. Mizan got here is in 2000, March 2008, she requested asylum to USCIS, and then her case was referred to an immigration judge. There was no removal order issued as if she'd been arrested. But did somebody make a determination that she was subject to removal? They would have had to, in order to refer to the judge, they would have to say that she's from France and she's passed her 90 days, she's no longer in status here, she doesn't rate or move a hearing, send it over to the immigration judge. And that's the form that you can't find? I don't know if it exists, Your Honor. I don't know if it ever has. Okay. All right. You want to address the merits a little bit? Yes, Your Honor. Thank you. With regard to Ms. Mizan's competency, I'd like to start off to say that Petitioner has never said she's not confident. Petitioner's counsel has never said she's not confident. They didn't raise it below. They didn't raise it in their supplemental brief. This is just brought on by amicus. And to date, Ms. Mizan, and even during the removal hearing, she said she was confident. The appropriate question to consider is whether the immigration judge's competency determination is supported by substantial evidence. Well, the lawyer from DHS brought it to the IJ's attention, correct? During the hearing, I'm sure they talked back and forth, but the judge decided to give a competency hearing. I thought that was because of the DHS lawyer. He may have prompted the judge or they could have talked it out, but the judge did, in fact, give the competency hearing. How we, you know, the mechanism. There had to be some indicia of, you know, mental problems. Well, he commented on her testimony, on the atypical nature of her claim. And just, and so when you think, competency is a factual determination. It's not determined by doctors. It's determined by judges. And it's preponderance of the evidence. And under MAM, the judge can employ lots of methods to determine whether or not an alien is competent. Ms. Mizan said that she was a persecutor in France. There was something implanted in her head. That's an atypical claim. So the judge, when he made his determination that she was competent, looked at the entire record. In fact, over this four-year period, in fact, Ms. Mizan has been competent or proceeding competently since 1995 when she alleges this. She went to law school. She filed claims over in France. And she came here since that time. She has, she's had a work authorization since the hearing. She figured out how to file an asylum claim on her own. She figured out how to do an appeal. She talked to the judge below that when she failed to appear for one hearing, she reopened on her own, saved herself $2,500. And the judge was impressed by this and said at the very last hearing in 2013, you know, I'm including this in my determination that you're competent. And she said, you're right, I am. Or she acknowledged that she was. And so it really doesn't matter what the nature of her claim is. People can make atypical claims all the time. My son goes to school in Alabama, and there's a church a mile from Auburn that they believe the world's flat. You know, I can go 200 miles west of where I live in Virginia, and people will drape themselves in rattlesnakes and copperheads. And when I was an officer down at Camp Pendleton every night, this was during 1994, 1995, I'd receive calls from people that they thought we were monitoring them, they were watching them. The X-Files was big at the time. Did you find nothing inconsistent after the IJ made that sort of determination that she found her competent? At the end of the, what the IJ referred to as a competency hearing on the, I forget the date. In 2013? Yes. He conducted the competency hearing. And at the beginning of the hearing, she does a little competency determination. Sure. She asks her question. But let me ask you this. So she makes the finding, then she moves to the merits of the claim, and then Ms. Mazon starts talking about having the chip implanted. Well, this was part of her claim. This is why the judge did the competency hearing. It seems like she's really suffering from some belief. Your Honor, she may have this belief, but since she's held the job, she's not been incarcerated. She's not been detained. The only time in the United States since 2005 that she had to see any doctor was once for a digestive issue and once because of anaphylactic shock due to, I think, a bee sting. She has been functioning and understanding and certainly understood the removal proceedings, and she certainly understood the nature of the removal proceedings. She needed to have evidence that she didn't have evidence. She even asked the immigration judge whether or not a cat was available at asylum-only proceedings. She understood that. The EHA's counsel at the time wasn't sure but looked into it. So she understood what was going on, the proof she needed. So just because she's had an atypical claim does not mean she's competent. Thank you. Okay. Thank you. Thank you. Your Honors, a quick point on jurisdiction before I turn to the merits. In the record at 341 to 342, the court will find the notice of referral to the immigration judge. That notice indicates that DHS has determined that the petitioner was entered through the visa waiver program and was an overstay. And under the regulation, that means she's removable but for the outcome of this asylum-only proceeding. And so that's the reason this court has jurisdiction. Where's that in the record? It's at 341 to 342. 341 to 342. And this is the same facts as were before the court in the Baud Tian case. So you think we have jurisdiction? Yes, Your Honor. I mean, if the government had gotten up here and said, we won't remove her if she loses this petition, then we would think there was a question. But given this in the record on the government's representation, she's clearly going to be removed if this court denies her petition. Okay. As to the merits, Your Honors, on the waiver point, I would say there's three exceptions to the general waiver rule that are laid out by this court in the ULA case. They all apply here. The government addressed this at length. It would be a manifest injustice not to address it. Should the court find, you know, for some reason not one to reverse the competency determination, the other option available to the court is to remand with instructions to the immigration judge to redo the competency hearing and get a medical evaluation to determine whether the petitioner really was competent. And at that new competency hearing, the judge should consider not only whether she has a reasonable opportunity to present evidence, but whether she can do the additional functions that are necessary to represent yourself pro se. Okay. So when you were up here a minute ago, you agreed that the I.J. made a competency determination and found her competent. Yes, Your Honor. Which is inconsistent with the I.J.'s, you know, the I.J. also finding that she had a delusional state of mind, but the I.J. did make a competency determination as well. And we think that's not supported by substantial evidence and this court should reverse, but another option available to the court. It's not supported by substantial evidence because? Because she testified that she was afraid the government implanted a chip in its tooth. She tried to ask Keanu Reeves for help. She learned about it from a TV host. She was a well-educated person. She could navigate the asylum clock, but well-educated people can suffer from mental disorders as well. She clearly did. She clearly was not presenting reasonable evidence. The only witness she tried to get to attend her hearing was this TV host. Okay. Thank you. The matter is submitted.
judges: Kelly, Paez, Bade